UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **CLINIC REALTY L L C** | **:** | **CASE NO.  2:22-CV-05724** |
| **VERSUS** | **:** | **JUDGE JAMES D. CAIN, JR.** |
| **LEXINGTON INSURANCE CO** | **:** | **MAGISTRATE JUDGE LEBLANC** |

## MEMORANDUM ORDER

Before the court are two motions compel.  The first, *Clinic Realty LLC'S Motion to Compel Discovery Responses*, seeks an order compelling more complete responses to certain items of discovery.  Doc. 19.  The second, *Plaintiff Clinic Realty LLC's Motion to Compel Defendant's Rule 30(b)(6) Deposition*, seeks relief in advance of defendant's upcoming Rule 30(b)(6) deposition on March 7, 2024, in light of objections to various deposition topics raised by Defendant, Lexington Insurance Company ("Lexington").  Doc. 20.  Lexington opposes both motions.  Docs. 23, 24.  Clinic Realty has replied [doc. 25], and the motions are ripe for ruling.

For the reasons that follow, it is hereby **ORDERED** that the motion to compel discovery responses [doc. 19] is **GRANTED**.  It is **FURTHER ORDERED** that the motion to compel Defendant's Rule 30(b)(6) Deposition [doc. 20] is **GRANTED IN PART** and **DENIED IN PART**.  The incorporated motions for attorneys' fees associated with each motion to compel will be addressed by separate ruling.  The parties are to contact the undersigned for guidance should any dispute arise during the upcoming deposition.

# I.
## BACKGROUND

Plaintiff Clinic Realty LLC owns a medical office building in Lake Charles, Louisiana. It is undisputed that the building was damaged in Hurricanes Laura and Delta, which made landfall near Lake Charles on August 27, 2020, and October 9, 2020, respectively. At all relevant times, the property was insured by a policy of insurance issued by Defendant, Lexington Insurance Company. Doc. 1, att. 1, p. 3. Clinic Realty filed suit in state court,[1] alleging that Lexington made inadequate and untimely payments on the claim and raising claims of breach of insurance contract and bad faith under Louisiana law. Lexington removed the case to this court, and it is set for trial before the district judge on April 22, 2024.

The discussion that follows draws on the district court's memorandum order in *Chennault International Airport Authority v. Starr Surplus Lines Ins. Co.*, No. 2:22-cv-2735 (W.D. La. 7/20/23)(Doc. 76), and discovery should proceed consistent with that opinion, as outlined below. The Court acknowledges the district court's upcoming ruling on a motion to quash [doc. 84] filed by defendant in *Mancuso v. Starr Surplus Lines Ins. Co.*, No. 2:21-cv-3947 (W.D. La. 2/23/24), and the court reserves the right to revisit this ruling to the extent that the *Mancuso* ruling materially modifies its prior ruling in *Chennault*.

# II.
## LAW AND APPLICATION

**A.   Governing Law**

Rule 30(b)(6) provides the mechanism for deposing a corporation. Under this rule, the party requesting the deposition must "describe with reasonable particularity the matters for examination." Fed. R. Civ. Proc. 30(b)(6). The corporation then designates a person or persons

---

[1] *Clinic Realty LLC v. Lexington Ins. Co.*, No. 2022-3879D (La. 14th JDC 8/18/22). Doc. 1, att. 1.

who will testify on its behalf and through which it provides responses to the noticed topics. *Id.*; *Resolution T. Corp. v. S. Union Co.*, 985 F.2d 196, 197 (5th Cir. 1993). Additionally, Rule 26 sets a broad scope for discovery:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. Proc. 26(b). Courts must limit the frequency or extent of discovery if they determine that (1) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, and less expensive; (2) the party seeking discovery had ample opportunity to obtain the information; or (3) the proposed discovery is outside the scope of Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2)(C). The court should also limit discovery that is not proportional to the needs of the case. *Carr v. State Farm Mut. Auto. Ins. Co.*, 312 F.R.D. 459, 468 (N.D. Tex. Dec. 7, 2015) (citing *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 264 (5th Cir. 2011)). Finally, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

B.  **Application to Disputed Discovery Requests**

Clinic Realty's motion to compel discovery responses [doc. 19] references five general categories of items for which they seek more thorough responses: 1) loss reserves, 2) guidelines, protocols, and forms; 3) reinsurance; 4) claims handlers' files; 5) other depositions. Each general category references one or more discovery requests or obligations—initial disclosures, requests for admission, interrogatories, and/or requests for production—that call for defendant to produce

information relevant to that category. For the sake of clarity and precision, to the extent this ruling orders Lexington to produce additional information, this opinion generally focuses on the text of the *request(s) for production* associated with each category of document.

### 1. Loss Reserves

Clinic Realty seeks information relating to loss reserves, referencing Initial Disclosures 4(a),(c), and (g); Requests for Admission Nos. 8, 10, and 11; Interrogatory No. 16; and Request for Production No. 12. In its opposition memorandum [doc. 24], Lexington indicates that it will "supplement its discovery responses prior to the Rule 30(b)(6) deposition and produce the redacted information as to the reserves set during the adjustment of Plaintiff's Hurricane Laura and Delta claims." Doc. 24, p. 4. But Lexington maintains its objections to the parts of Interrogatory 16 and Request for Production 12 that seek documents and "information related to the financial and tax reporting and/or accounting for Lexington's reserves, reinsurance claim(s), rough orders of magnitude, and/or payments for the losses, damages…" *Id.*

Clinic Realty's Request for Production No. 12 and Lexington's response reads as follows:

> **REQUEST NO. 12.**
> Please produce a copy of every document, claims-file entry, note, communication, journal entry, and ledger balance that reflects Your loss reserves booked for the Claims.
> **RESPONSE**: LEXINGTON incorporates by reference each of its General Objections as though fully set forth herein. LEXINGTON also objects to Request No. 12 as it seeks confidential, proprietary or otherwise protected business or commercial information and information relating to reserves, which is not reasonably calculated to lead to the discovery of relevant or admissible information.

Interrogatory No. 16 seeks narrative answers as to financial and tax reporting and/or accounting for Lexington's loss reserves, reinsurance claims, rough orders of magnitude and/or payments. Consistent with the *Chennault* decision referenced above, the information sought via Request for

Production No. 12 and Interrogatory No. 16 is discoverable. Lexington is directed to produce any and all materials responsive to Request for Production No. 12, accompanied by a privilege log as necessary, and Lexington is to provide written response to Interrogatory No. 16.

## 2. Guidelines, protocols, and forms

Clinic Realty seeks information related to Lexington's internal guidelines, protocols, and forms, referencing Initial Disclosure 4(k); Request for Admission Nos. 1, 2, 3, and 4; Interrogatory Nos. 4, 9, 10, 12, and 16; Request for Production Nos. 6, 7, and 9. Doc. 19, att. 1, p. 4. Collectively, and to briefly summarize, these requests seek documents and information concerning "how to properly adjust Louisiana first-party property damage claims;"[2] steps, guidelines, guidance, training, and protocols Lexington put in place to ensure that the claim was being properly adjusted;[3] protocols governing the renewal of insurance policy or determination of the limits of liability;[4] and timelines and standards related to the setting of reserves.[5] Plaintiff asserts that after denying the existence of Claims Handling Guidelines, Lexington belatedly produced two responsive documents which themselves reference numerous other documents that appear responsive to these requests but have not yet been produced.

As specifically concerns Requests for Production No. 6, 7 and 9, the requests and Lexington's September 21, 2023, responses are as follows:

> **REQUEST NO. 6.**
> Please produce a copy of every written policy, rule, outline, memoranda, note, guideline, standard, procedure, handbook, and/or manual, whether printed or electronically stored, that You provide or otherwise makes available to representatives, employees, and/or contractors regarding how to properly handle, adjust, and/or evaluate a Louisiana insured's property-damage claim such as the Claims that gave rise to this case.

---

[2] *See* Requests for Admission Nos. 1-4; Request for Production Nos. 7. Doc. 19, att. 3, pp. 1-3, 30.
[3] *See* Interrogatory Nos. 4, 9-10, 12; Request for Production No.7. Doc. 19, att. 3, pp. 17-18, 20, 30.
[4] *See* Interrogatory No. 12; Request for Production No. 9. *Id.* at pp. 22, 31
[5] *See* Interrogatory No. 16. *Id.* at pp. 24

> **RESPONSE:** LEXINGTON incorporates by reference each of its General Objections as though fully set forth herein. LEXINGTON further objects to this Request to the extent it seeks documents or information protected from disclosure by the attorney-client privilege and/or the work product doctrine.
>
> Subject to and without waiving any objections, LEXINGTON states that it 1 [sic]produced the Commercial Property and Energy Claims Handling Guidelines and AIG Claims (U.S.) Claims Handling. LEXC007175 - LEXC007282.[6]

**REQUEST NO. 7.**
For each individual identified in Your answers to the interrogatories above, please produce a copy of every document that evidences, supports, or otherwise confirms he/she has the training, experience, and/or qualifications necessary to properly handle, adjust, and/or evaluate the Claims or to perform an inspection of the damages to the Property and/or Personal Property and render a report, estimate, and/or recommendation accordingly.

> **RESPONSE**: LEXINGTON incorporates by reference each of its General Objections as though fully set forth herein. LEXINGTON further objects to Request No. 7 as vague and ambiguous.
>
> Subject to and without waving any objections, LEXINGTON states that it produced the Commercial Property and Energy Claims Handling Guidelines and AIG Claims (U.S.) Claims Handling. LEXC007175 -LEXC007282.[7]

**REQUEST NO. 9.**
Please produce a copy of every policy, rule, requirement, regulation, suggestion, direction, recommendation, standard, procedure, and/or guideline You provide or otherwise makes available to agents, representatives, contractors, and/or employees regarding the inspection of a Louisiana insured's property for evaluation purposes relating to the issuance or renewal of an insurance policy and/or the determination of an insured's limits of coverage.

> **RESPONSE:** LEXINGTON incorporates by reference each of its General Objections as though fully set forth herein. LEXINGTON further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege.[8]

---

[6] Doc. 19, att. 3, p. 30.
[7] *Id.* at. 30-31.
[8] *Id.* at 31.

Lexington argues that the two documents produced in response to these requests "sufficiently satisfy" those requests, and Lexington makes a relevance-based objection to the production of any of the items referenced in the produced documents, which are themselves listed in Clinic Realty's memorandum. Doc. 24, p. 7.

The items sought in Requests for Production no. 6, 7 and 9 are relevant to the case, especially in light of the bad faith claim against Lexington, and therefore discoverable. Lexington is to produce all documents responsive to those requests for production without limiting its production based on Lexington's unilateral determination of what materials are relevant and/or proportional to the needs of this case. Lexington is to bear in mind that Request for Production No. 7 seeks documentation regarding the training and credentials of individuals identified in other discovery responses. Consistent with the *Chennault* ruling, inquiry "into the professional background and qualifications of individuals who worked on its claim" is appropriate here. *Chennault International Airport Authority v. Starr Surplus Lines Ins. Co.*, No. 2:22-cv-2735 (W.D. La. 7/20/23)(Doc. 76, p. 8). If Lexington withholds or redacts any responsive documents, Lexington is to produce a log identifying those documents and the reason they are being withheld or redacted.

**3.     Reinsurance**

Referencing Interrogatory Nos. 16 and 17 and Request for Production No. 14, Clinic Realty seeks information about reinsurance that may be applicable to Clinic Realty's claims. Doc. 19, att. 1, p. 6. Although Lexington's formal responses to these requests merely contain objections to the requests, Lexington states in its opposition memorandum that "there is no reinsurance applicable to Plaintiff's Hurricane Laura or Delta claims. Thus there is no information to supply in regards

to Plaintiff's Interrogatory No. 17 or Request for Production No. 14 (Interrogatory No. 16 does not seek information on reinsurance)." Doc. 24, p. 8.

If no documents are responsive to any given request, Lexington is to formally amend its responses to indicate as much, if it has not yet done so. Otherwise, the requested information is relevant to plaintiff's claims, at least for discovery purposes, and Lexington is to produce all documents responsive to those requests for production without limiting its production based on Lexington's unilateral determination of what materials are relevant and/or proportional to the needs of this case. If Lexington withholds or redacts any responsive documents, Lexington is to produce a log identifying those documents and the reason they are being withheld or redacted.

### 4.     Claims handlers' files

Clinic Realty asserts that certain third parties performed "much of the work of adjusting" its claim, in addition to Lexington's in-house adjuster Shanna Novak. Doc. 19, att. 1, p. 6. Referencing Initial Disclosure 4, Request for Admission No. 32, Interrogatory Nos. 3, 5, 6, and 7; and Request for Production Nos. 8, 10, and 11, Clinic Realty asserts that Lexington has failed to produce the files maintained by these third-party individuals and/or firms, including Jimmy Dodson and others at Crawford & Company and Ed Pudimott and others at Young & Associates. *Id.* Lexington responds that "[t]he files and records of Crawford & Company and/or Young & Associates are not maintained by Lexington" and Lexington suggests that the file maintained by Lexington contains documents provided to Lexington by these consultants. Doc. 24, p. 8. Lexington notes that Clinic Realty has issued subpoenas seeking these documents directly.

Clinic Realty's requests for production numbered 8, 10, and 11 and Lexington's responses are as follows:

**REQUEST NO. 8.**

Please produce a copy of every document, whether printed or electronically stored, that relates in any way to the inspection of the Property from January 1, 2012, through August 26, 2020, and/or every other document identified or otherwise relied upon in Your answers above.

**RESPONSE:** LEXINGTON incorporates by reference each of its General Objections as though fully set forth herein. LEXINGTON further objects to Request No. 8 to the extent that this Request seeks documents or information protected from disclosure by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiving any objections, LEXINGTON refers Plaintiff to the non-privileged portions of its claim file, LEXC000001-LEXC007129, which were previously produced.

**REQUEST NO. 10.**

Please produce a copy of every document that evidences or that You contend supports and/or corroborates Your disagreement with or denial of damages presented by Clinic Realty in connection with its Claims.

**RESPONSE**: LEXINGTON incorporates by reference each of its General Objections as though fully set forth herein. LEXINGTON further objects to Request No. 10 to the extent that this Request seeks documents or information protected from disclosure by the attorney-client privilege and/or the work product doctrine.

Subject to and without waiving any objections, LEXINGTON refers Plaintiff to the non-privileged portions of its claim file, LEXC000001-LEXC007129, which were previously produced.

**REQUEST NO. 11.**

To the extent such documents were not produced in connection with Your responses to the requests for production above or in conjunction with Your Initial Disclosures, please produce a copy of every document and/or thing that was identified, relied upon, and/or described in or that otherwise supports and/or corroborates Your answers to the interrogatories herein and/or relates in any way to the Claims, the Policy, Clinic Realty, the Property, and/or the Personal Property.

**RESPONSE**: LEXINGTON incorporates by reference each of its General Objections as though fully set forth herein. LEXINGTON further objects to Request No. 11 to the extent that this Request seeks documents or information protected from disclosure by the attorney client privilege and/or the work product doctrine.

>Subject to and without waiving any objections, LEXINGTON states that it does not have any documents in its possession, custody, or control, which are responsive to this Request.

The contents of any files and records created by third-party consultants that pertain to Clinic Realty's claims that are at issue in this litigation are relevant and discoverable. If Lexington possesses any materials responsive to the above requests, Lexington is to produce them, including any responsive documents that may have been created or maintained by outside firms or individuals.

**5.     Other depositions.**

Clinic Realty's Request for Production No. 13 and Lexington's response are as follows:

**REQUEST NO. 13.**
>Please produce a copy of corporate depositions of Lexington taken in Hurricane Laura and/or Hurricane Delta cases.

>**RESPONSE:** LEXINGTON incorporates by reference each of its General Objections as though fully set forth herein. LEXINGTON further objects to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of relevant or admissible evidence as it seeks information regarding claims other than Plaintiffs Hurricane Laura and Hurricane Delta claims. Each claim is fact intensive and is evaluated based upon the details particular to the claim, such as the alleged nature and extent of the damage, the specific policy language and the applicable law governing the insurance contract in question. Because of differences in policy language and facts particular to the policyholder and its business operations, each claim must be handled on a case-by-case basis.[9]

Clinic Realty states that it based this request on the memorandum order in the *Chennault* case, referenced above, and that the material is discoverable under that ruling. Doc. 19, att. 1, p. 7. Lexington responds that deposition transcripts from other litigation are irrelevant and not proportional to the needs of the case within the meaning of Fed. R. Civ. Proc. 26 because each

---

[9] Doc. 19, att. 3, p. 33.

claim is handled on a case-by-case basis.  Doc. 24, p. 9.  Lexington notes that its employees involved in this claim, Shanna Novak and Jeff Urbanic, have not testified on Lexington's behalf in other Hurricane Laura or Delta claims, and that corporate witness Bill Thorsen "has not testified on Lexington's behalf at trial or given any depositions in any Louisiana state or federal court suits [ . . . ] stemming from Hurricanes Laura or Delta."  Doc. 24, p. 10.

The *Chennault* memorandum order overruled relevance-based objections similar to what Lexington raises here, finding that prior sworn testimony of the defendant—when limited as to particular matters—is relevant and may lead to discoverable information, particularly as regards claims handling practices.  *Chennault International Airport Authority v. Starr Surplus Lines Ins. Co.*, No. 2:22-cv-2735 (W.D. La. 7/20/23)(Doc. 76, p. 5).  Accordingly, Lexington is to produce transcripts of any corporate depositions Lexington has given in Hurricane Laura and/or Hurricane Delta cases.

**C.     Application to Disputed Deposition Topics**

In *Plaintiff Clinic Realty LLC's Motion to Compel Defendant's Rule 30(b)(6) Deposition* [doc. 20], Clinic Realty seeks an order compelling Lexington to produce witnesses at its March 7, 2024 corporate deposition who are "knowledgeable about the topics listed in the notice attached as Exhibit A."  Doc. 20, p. 3.  The Notice of Deposition lists 26 deposition topics, and the motion asserts that "Lexington objected to every deposition topic, for virtually every known reason, and refused to provide a corporate witness for some of them."  Doc. 20, att. 1, p. 2.  In its opposition memorandum, Lexington asserts that it has been cooperative in attempting to schedule the Rule 30(b)(6) deposition, and that it objected in writing to Topics 10, 11, 18, 21, 22, 24, and 25, which read as follows:

10. The factual basis for every allegation Lexington has made or intends to make in connection with the above-captioned lawsuit, including the allegations in its answer, discovery responses, and disclosures;

11. Any and all evaluations, audits, and/or consultations between every adjuster assigned to the Claims and any other person regarding the Claims, the Property, and/or Clinic Realty;

18. All information, opinions, evaluations, and actions related to the information and documentation provided to Lexington in connection with Clinic Realty's submission of Initial Disclosures in this case;

21. Lexington's policies, rules, requirements, regulations, suggestions, directions, recommendations, standards, procedures, and/or guidelines provided or otherwise made available to its agents, representatives, contractors, and/or employees in connection with the inspection of an insured's property and claims history for purposes of evaluating the issuance, renewal, conditional renewal, nonrenewal, and/or termination of an insurance policy and/or the determination of an insured's limits of coverage;

22. All communications, evaluations, calculations, discussions, directions, recommendations, reports, and information related to the issuance and every renewal of the Policy, or any previous policy of insurance issued by Lexington to Clinic Realty, including, but not limited to, its determination of Clinic Realty's limits of coverage and its evaluation of the Property;

24. All information related to Lexington's reinsurance that applies, or may apply, to the Claims and/or to any claims Clinic Realty has made for losses, damages, penalties, and/or attorney's fees as a result of or otherwise in connection with this lawsuit, including, but not limited to [subparagraphs excluded];

25. All information related to the financial and tax reporting and/or accounting for Lexington's reserves, reinsurance claim(s), rough orders of magnitude, and/or payments for the losses, damages, and/or penalties and attorney's fees Clinic Realty has asserted in connection with the Claims, including, but not limited to [subparagraphs excluded].[10]

Lexington's objections to the first three topics listed above (Topics 10, 11, and 18) center on its concern that the topic seeks information subject to protection under the attorney-client privilege or work-product doctrine. Doc. 23, pp. 2-3. The court finds that the general areas of inquiry described by Topics 10, 11, and 18 are designed to lead to discoverable information. Under

---

[10] Doc. 20, att. 3, pp. 4-6.

Rule 26, privileged information is, of course, not discoverable. Should a dispute arise in the deposition as to how to navigate an area of questioning that touches on thoughts or impressions that may be subject to protection under attorney-client privilege or work-product doctrine, the parties are directed to seek instruction from the undersigned.

Lexington objects to Topics 21-22 on the basis that they seek "information related to underwriting policies and procedures of Lexington which are not in dispute in this litigation," noting that "there are not claims in this lawsuit alleging that Lexington improperly issued the policy to Plaintiff, and Lexington further objects as to the availability of certain information managed by outside underwriters  Doc. 23, p. 4. Topic 21 concerns the policies affecting the "renewal, conditional renewal, nonrenewal, and/or termination of an insurance policy and/or the determination of an insured's limits of coverage" and Topic 22 concerns the historic communications and other documentation related to renewal and policy limits concerning Clinic Realties policy.  Referencing Lexington's response to Request for Admission No. 30, Clinic Realty asserts that Lexington has put these topics at issue by trying to "minimize its own underwriting conclusion that Clinic Realty's property was 'well-maintained' before Hurricane Laura." Doc. 20, att. 1, p. 3.  Request for Admission No. 30 and Lexington's response read as follows:

> **REQUEST NO. 30.**
> Please admit that Your underwriting file describes Clinic Realty's building as follows: "well-maintained, fire extinguisher, sprinkler systems, alarm systems are all operational and well maintained. There were no property issues noted" (LEXC000152).
>
> **RESPONSE:** LEXINGTON objects to Request No. 30 as vague, ambiguous, and misleading to the extent that it suggests that the underwriting file contains a report prepared in 2020. To the extent that a response is required, LEXINGTON admits that Request No. 30 cites two sentences of an underwriting inspection performed on June 5, 2017.

Lexington's assessment of the pre-storm condition of the building is certainly a relevant topic of inquiry, but the Court agrees with Lexington that the scope of information sought in Topic 21 and 22 is overly broad because the defendant's procedures governing policy renewal and limits of liability are far removed from the central question here: whether Lexington paid according to the policy it issued to Clinic Realty. Lexington's objections to Topic 21 and 22 are sustained, with the caveat that plaintiff may inquire into Lexington's understanding of the pre-storm condition of the Clinic Realty building and how it arrived at that understanding.

Lexington makes a relevance-based objection to Topic 24 because, as stated above, Lexington asserts that there is no reinsurance related to Plaintiff's claims. The district judge determined that reinsurance is an appropriate topic for Rule 30(b)(6) deposition in the *Chennault* ruling, but the judge also limited the scope of Topic 24 to reinsurance bearing on the *Chennault* claims. *Chennault International Airport Authority v. Starr Surplus Lines Ins. Co.*, No. 2:22-cv-2735 (W.D. La. 7/20/23)(Doc. 76, p. 7). Consistent with the *Chennault* ruling, Lexington's objections to Topic 24 are overruled, but Clinic Realty is to limit the scope of questioning to reinsurance available for the Clinic Realty claims. Here, Clinic Realty expresses doubt that there is truly no reinsurance applicable to the Clinic Realty claims, noting that "Lexington is not explaining whether it considers some kind of facutative arrangement specific to Clinic Realty the only kind of reinsurance that could be 'applicable.' Clinic Realty may fall under a broader category of losses insured through a treaty, in which case the reinsurance is still applicable to Clinic Realty's claims. Clinic Realty does not want to know the amount of reinsurance demanded or received for other people's claims. But it does deserve to know about the information pertaining to itself." Doc. 25, p. 4. It is appropriate that Lexington should be able to produce a deponent who can answer these and related questions about reinsurance applicable for the Clinic Realty claims.

Finally, Lexington objects to Topic 25, which is virtually identical to Topic 25 addressed in the *Chennault* case, on the basis of overbreadth and irrelevance. In overruling the objection to that topic in *Chennault*, the district judge determined that the information sought by Topic 25 is discoverable and not unduly burdensome. Accordingly, Lexington's objection to Topic 25 is overruled.

### III.
#### CONCLUSION

For the foregoing reasons, it is **ORDERED** that *Clinic Realty LLC'S Motion to Compel Discovery Responses* [doc. 19] is **GRANTED**. It is **FURTHER ORDERED** that *Plaintiff Clinic Realty LLC's Motion to Compel Defendant's Rule 30(b)(6) Deposition* [doc. 20] is **GRANTED IN PART** and **DENIED IN PART**. The Court will address by separate ruling the incorporated motion for attorneys' fees associated with each motion to compel.

**THUS DONE AND SIGNED** in chambers this 5th day of March, 2024.

_____
**THOMAS P. LEBLANC**
**UNITED STATES MAGISTRATE JUDGE**